Good morning. May it please the court. I am Jeffrey Jacobson, representing Anthony Espinosa in this case. I would like to reserve five minutes for rebuttal. It has been 46 years since the Supreme Court and Board of Regents v. Roth established that a terminated employee has a constitutionally-based liberty interest in clearing his name when stigmatizing information regarding the reasons for the terminations are publicly disclosed. Appellant in this case is seeking judicial recognition that the Department of Justice must provide due process to a law enforcement officer before it makes the decision to not use the officer as a future witness under Giglio. The due process clause is — Sotomayor You have any case at all that stands for that proposition? I haven't found any. Jacobson I have not found any either, Judge. It's my understanding that in many ways this fact pattern has yet to be presented to this Court. Sotomayor Well, Board of Regents v. Roth dealt with the employee-er. We're not dealing with the employee-er here, are we? Jacobson Well, that is true, Judge, that the employer in this case was the Border Patrol or Customs and Border Protection, but the Department of Justice clearly affected the employee in this case. Sotomayor But not exactly in a reputational way. In other words, they made a decision for their own purposes about whether to use him as a witness, and that was their decision. It wasn't that they were running around calling him names or saying that he did terrible things. They just said, we're not going to use him as a witness. Jacobson Well, respectfully, Judge, the Giglio letter in this case actually goes a lot farther. It doesn't say simply that we're going to choose not to use him as a witness in the future. It actually impugns his character. It says that no prosecutor, and I'm looking at the excerpts of record at 55. In addition, our attorneys are reluctant to work with agents who have displayed such untrustworthiness and lack of judgment. Had the U.S. Attorney's Office simply stopped where it said, we made a decision under Giglio that we're not going to use him in the future, this ---- Kagan But the reason that he wasn't the impact on his job was that he wasn't going to be able to testify. Jacobson Well, but a Giglio taint alone, Judge, is not in and of itself a complete bar. So in other words, under Giglio, all the U.S. Attorney's Office is saying that we have information that might be disclosed, that might have to be disclosed, that will likely have to be disclosed, that would potentially impeach his testimony or character. A Giglio letter or a Giglio taint in and of itself does not mean that this witness cannot testify. Kagan But what was the reason for his demotion? Jacobson Inability to perform the full range of functions. Kagan Exactly. So what difference does it make what else is in this letter? Jacobson Well, because the U.S. Attorney's Office in this case didn't just Giglio never used this person ever again as a witness to testify. That's what the ---- Kagan That's what the Giglio letter says. Sotomayor I think his employer, the CBP, actually given a full and fair hearing. They gave him the opportunity to explain the situation they were concerned about, the fact that his girlfriend or whatever that relationship was all about may have had an impact upon his ability to continue to serve in that particular capacity. But they gave him a hearing, didn't they? Jacobson Well, he gave them the process. The Border Patrol certainly gave them the process that was due, but Mr. Espinoza did not have the opportunity to address the hard facts of the case because, for example, he asked for the DHS-OIG file to know specifically what the concern was, and he was denied that. And in fact, the deciding official basically said the underlying facts don't matter. Simply, the U.S. Attorney's Office said you can't testify, therefore, he's not going to do it. Kagan That's basically what I'm saying. The underlying facts didn't matter to what his harm was. Jacobson That's right. Kagan So therefore, what's the due process problem? Jacobson The due process problem is that the U.S. Attorney's Office made that determination without process. The U.S. Attorney's Office made the Giglio decision. Kagan But are you then — in other words, either you're saying that whenever the U.S. Attorney's Office makes a decision based on their assessment of credibility that somebody isn't credible, they have to have a hearing, which I don't think you're saying. You're saying it's because it connected up to his employment. But the only thing that connected up to his employment was the inability to testify, not anything else. Jacobson Well, what I'm saying, Judge, is that the U.S. Attorney's Office owes law enforcement officers notice and an opportunity to respond before it makes the decision to Giglio taint them. Kagan Whether or not it affects it. Jacobson Whether or not. Kagan It ultimately affects his — Jacobson Exactly. Kagan Even if the Border Patrol had said, fine, you can still be a Border Patrol person, we'll just find somebody else to testify, that would be — they'd still have to have a hearing. Jacobson Exactly, because — Kagan The Department of Justice would still have to have a hearing. Jacobson The Department adjusts not after the decision is made, before the decision is made. Kagan Well, what's the liberty interest if there's no impact on his job? Jacobson It's the Roth reputation plus and stigma plus tests. In fact, under Roth, it's very clear a plaintiff can show a protected liberty interest if he establishes that the government changed his status and accompanied such a change with defamation. Kagan Right, if they changed his status. But you're saying it doesn't matter if they changed his status. The status being a prospective witness, that's the status you're talking about? Jacobson Exactly, Judge. Kagan And he has some right to be a prospective witness? Jacobson I'm sorry. Could you repeat the question? Kagan He has some liberty interest in being a prospective witness? Jacobson He has a liberty interest in his reputation. And, again, the — this case is unique and different because it wasn't just the Giglio taint. It was, beyond that, it was, we're not going to use you as a witness. If it was just a Giglio taint alone, that would be one thing. Kagan What's the difference between a Giglio taint and I'm not going to use you as a witness? Jacobson So a Giglio taint basically alerts the employer and other defense attorneys and other prosecutors that this had — this person has — they are aware of information that could impeach this person's credibility. It's not in and of itself an absolute bar to testifying. The prosecutor in this case went beyond one step and said, in addition, we are not going to use you. Kagan Well, if this isn't hooked up to his employment prospects, which is what you seem to be saying, then, you know, then if, you know, I'm somebody else who the government says I'm not going to use as a witness because I don't find you credible, do I have a right to a hearing by DOJ? Jacobson You have a right to a hearing before that decision is made. Kagan Any time the government decides not to have somebody as a witness because they find his credibility questionable. Jacobson So maybe it's easier if I explain it in the terms of this — in the terms of this case. The Department of Justice did — I'm sorry, the Department of Homeland Security Office of Inspector General did an investigation, an internal affairs investigation. It took that investigation, went to the U.S. Attorney's Office, shared information with the U.S. Attorney's Office in a vacuum, in a bubble, and the U.S. Attorney's Office, as a result of that meeting with the Department of Justice, with DHS-OIG, issues the Giglio letter, for which the appellant had no opportunity to address the issues raised. Sotomayor But you're discounting the entire fact that he had a hearing by his employer. What would — what would you want to have happened if we were to agree with you that he would be entitled to another hearing? What would that accomplish? You already had a hearing. Jacobson Well, but the hearing was not on the merits of whether or not a Giglio taint should have issued. Sotomayor It was on whether or not, you know, he should remain as a Border Patrol officer in light of the fact that he had this relationship with this woman, and they decided that they would keep him employed, but they would no longer let him do that. How — what more would you have accomplished at a so-called Giglio hearing than that? Jacobson Judge, the Border Patrol did not make the decision based on the underlying conduct. The Border Patrol strictly made the decision because he was unable to testify. It said, you are unable to testify because of what the Giglio letter says, therefore, you're fired. That's what it said. Sotomayor Maybe I'm wrong. I thought they gave him the full opportunity to explain his relationship with this woman and the underlying dynamics. Jacobson He never had that full opportunity. Sotomayor No. Jacobson In fact, he never got a copy of the materials that they — that the U.S. Attorney's Office relied upon. Kagan But just to understand your position, does it depend in any way on the fact that he was a public employee? Jacobson Yes, because he had a — well, that's the property interest. Kagan But my understanding, the way you were saying it before, was that because he — DOJ said he couldn't be a witness, he had a right to a hearing from DOJ. I don't know what that had to do with whether he was a Federal employee or not. Jacobson Well, it's the liberty interest, Judge. I would agree with you that the property interest is somewhat attenuated in this case because as — as was previously noted, the Department of Justice is not the appellant's employer. So the property interest is not the — Kagan And ordinarily, there's no liberty interest in reputation. Jacobson It would be — it would be the reputation plus or the stigma plus test under — Kagan But the plus is the employment, which you then say he does — is irrelevant, essentially. Jacobson Well, what I'm saying, Judge, is that the U.S. Attorney's Office altered his employment status by saying you cannot testify as a witness. And — and, you know, due process is a flexible concept. Its — its boundaries are really dependent on the circumstances, as you know. And I would — I didn't want to reserve — Kennedy But counsel — counsel, Judge Gould, I'd like to interject a question, if I may. You've used the term giglio taint several times. So my question is, is that — is that — I know what giglio is, of course, but is that phrase a giglio taint? Is that discussed in recorded decisions and — or literature that you rely upon? Jacobson It's an excellent question, Judge. It's actually more of a pejorative. I believe there is a Stanford Law Review article that addresses a giglio taint that's not briefed, but a giglio taint is — is really a pejorative. But this Court certainly has an opportunity to discuss the boundaries of what a prosecutor can and can't do, not that that's what this case is really about. What — what appellant is really seeking is to inject process where none currently exists before that liberty interest can be impugned. Kennedy Okay. If you could, before you leave today, give the citation to that article that you mentioned, please, to the court reporter, then that will be distributed. Jacobson Thank you, Judge. And I actually have it with me so I can give it to you on rebuttal. Thank you. Kagan Thank you. We'll give you the remaining time to rebuttal. Kate Foss May I please the Court? My name is Kate Foss and I represent the Department of Justice. As the questions from Your Honors recognized, plaintiff has a somewhat confusing argument as to what his interest is here. He argues on the one hand that there is a freestanding liberty interest to have notice and a chance to respond prior to a prosecutor's office issuing a giglio letter, but he also argues that under the tests identified in Roth that he has a property interest in his employment. But here — Kagan I think his giglio letters, I mean, it's similar to what Judge Gould is asking. You know, what's the history of all this? I mean, are — is there some internal process for doing this, or does the Department of Justice issue letters generally? I mean, aside from giglio, about who it will or will not use as a witness? Kate Foss The Department of Justice and the U.S. Attorney's offices have a manual that goes sort of generally over some of their giglio concerns, but as a matter of course, the only issue here is whether the prosecutor's office is entitled in their discretion to decide which witnesses they want to use in a particular case or in any case. Kagan I mean, supposing — I mean, would the DOJ issue a letter saying, never use this expert, he's a really lousy at cross-examination or something? Kate Foss It's possible, but I'm not aware of it, Your Honor. But here, in communicating its decision and trying to be close to one of our partner agencies also, you know, within sort of broader federal government, it's identifying that the Department of Justice is not going to use plaintiff as a witness because of giglio concerns. And as this Court has addressed in three different cases, in Roe, in Botello, in Barnett, that decision has been protected by absolute immunity as the type of prosecutorial discretionary decision that is imbued with this judicial process. Now here, because this is a case seeking injunctive relief, absolute immunity doesn't apply, but the same principles that animate absolute immunity also address the separation of powers issue. Sotomayor I'm confused about something, and I'd appreciate if you could straighten me out. He had a hearing by the employer, and they decided that they would remove him from Border Patrol and still keep him employed, but in a different capacity, right? Kate Foss Yes, Your Honor. Sotomayor Which came first, the giglio letter or that hearing? Kate Foss Your Honor, the giglio letter came first. Sotomayor Came first, and then he had the hearing by his employer. Kate Foss Right. After he, after the giglio letter, his employer provided a proposed removal and gave him notice and the opportunity to respond, which he did in writing and orally. Sotomayor Had the opportunity to respond to the so-called Sotomayor Am I, am I missing something? Kate Foss That's correct, Your Honor. Sotomayor So we had a hearing before his employer after the giglio letter was issued, correct? Kate Foss That's correct. Sotomayor And then they... Kate Foss But the employer then said, essentially, I don't care what actually happened. The fact is you have this giglio letter and we can't have you being a Border Patrol agent. So I, yes, they let him talk, but then they said it doesn't make any difference what actually happened because as long as the U.S. Attorney isn't going to use him as a witness, we can't have you being, doing this. Sotomayor Was that the reason why he, his employment status was changed, or were there separate findings of fact that were entailed? Kate Foss Well, Your Honor, the issue here is that the sole reason that he was removed from his position and changed to a mission support specialist was because the U.S. Attorney's office did not want to testify to his case. Sotomayor So in fact, there were no findings of fact about what actually happened because the, the, the employer's position was it didn't make any difference. Kate Foss That's correct, Your Honor. And that's why here the Roth tests don't apply to this scenario. There's no reputational interest that's been damaged. The only thing that has been changed is that the U.S. Attorney's office is declining to use him as a witness. Sotomayor Well, the letter did say not nice things about him. Kate Foss But that was, but, Your Honor, that letter was not adopted by his employer. In their letter identifying his removal, the sole ground was the fact that as a law enforcement officer, it's necessary that you be able to testify, and because you can  be able to testify. Sotomayor So was there ever a factual determination made on any level as to whether or not this was true or not, whether he made a misstatement on the form, or that was never really ascertained? Kate Foss There were no factual findings. The Giglio letter itself identified that they believed the plaintiff to be untrustworthy. But the facts itself, alone, the fact that plaintiff admitted to being in an on-and-off relationship for the past three years with a foreign national, and the question that he answered, which asked, do you have or have you had within the past seven years, close and continuing contact, suggests that there's also no real reputational interest that was changed. Ginsburg But are you — is your suggestion that we affirm on the ground that the district court decided? I mean, you agree that the absolute immunity ground doesn't apply, and we would have to strike out new ground with regard to the separation of powers notion. Is there any reason we should go there as opposed to a due process analysis? Kate Foss Your Honor, I think the easiest way is to simply provide that there is no liberty or property interest here. He has no right to testify or to be a witness for the U.S. Attorney's Office. And the Dorfman case is instructive on that, where in that case the plaintiff had been to sue the executive to challenge her denial of security clearance and said, well, I can't work in my job because it requires me to have a security clearance, and they say — and the court there said, well, because there's no liberty interest or property interest in a security clearance, there's no interest in having employment that requires it. And the same analysis applies here. Because it's a discretionary decision that can be taken away and there's no unilateral entitlement to it, there's no contractual basis, it's left to the prosecutor's discretion. Sotomayor What if he had sued the — his employer and requested a full hearing or what you might say a Roth hearing, would he be entitled to it? Your Honor, I would suggest that the Roth hearing would be unnecessary because his employer, in changing his status, did not adopt any defamatory statements. His employer simply said, you can't testify in front of the U.S. Attorney's Office, and so you can't perform the full and unrestricted duties of a Border Patrol agent. There's no reputation plus or stigma involved in that the only thing that his employer was saying is that you can't testify here. But plaintiff did receive this process. Scalia Never would have had the opportunity to say, you're wrong, that none of this ever happened, I'm totally innocent, this is a big mistake, and I'm not being given an opportunity before any agency to really get into the facts that would find me to be not at all implicated in this. I mean, should he not have some opportunity before his employer or the DOJ to be able to come forward and say, you got it all wrong? Your Honor, I would address that, no, I don't think that there's an opportunity to be able to clear one's name in terms of a credibility determination before the U.S. Attorney's Office. I think that opens the door to have every time that the U.S. Attorney's Office doesn't find someone credible or thinks that there's potential impeachment information to have a process. You said he would not even have that opportunity to do that before his employer. You went one step further. You said he would have no opportunity before the DOJ or his employer to clear his name that he's being falsely accused. Your Honor, as I understand it, plaintiff did address what he claims is this underlying issue in his verbal reply and in his written response in front of his employer. Ultimately, the employer found that it was irrelevant as the only issue here was the ability to testify. That seems to be the crux of it. If he had the opportunity to at least speak to his employer, and if the employer passed upon that issue and gave him the opportunity to explore the underlying facts, that would be a different type of thing than just saying it doesn't matter whether you're guilty or not guilty, you're still not going to have this position. Doesn't that trouble you a little bit? Your Honor, it doesn't trouble me simply because he did have the opportunity to speak his piece to provide. I'm trying to find it where that opportunity is manifested. I don't quite see it. When the proposed removal was given to him, he was given the opportunity to respond in writing and verbally. In so doing, he addressed the underlying issue of the OIG investigation. Well, it doesn't make any difference that essentially what you're saying is that the – I mean, it's nice to say they're different employers, but in fact, it's all the federal government. So the Border Patrol, you would think, would have an interest in – I mean, they could have looked at it one of two ways. They could have said, you know, it's none of our business whether the DOJ made a terrible mistake with regard to whether this guy could testify, we're just going to take their decision as a given. Or they could have said, we're going to find out what really happened here, and if we decide that – because it does have an impact on his employment status, and if we do what they said he did, we're going to go back to DOJ and argue with them. The problem is he's suing the wrong person, right? Your Honor, part of the problem is that he's suing the wrong person, but also in terms of these different agencies, the Department of Homeland Security and the Department of Justice, notwithstanding the fact that their missions overlap with some frequency, are different executive agencies. Well, that's right, but I would find it very hard to believe that the DHS couldn't say – couldn't go back to DOJ and say, you know, you guys have made a big mistake, we want you to look at this again. But that's not the way the case is set up. Right, Your Honor, and here, the only thing that the Department of Justice could provide to him is the ability to have him testify in their cases or not. There's no name-clearing hearing that the Department of Justice could provide, and that's why the Roth cases are inapplicable here. He can't clear those names. Well, they could provide it. It's not relevant to him. Well, that's not true. They could provide it. They just don't have a – your position is that they don't have any obligation to provide it because there's no due process violation in – or interest with regard to whether you get to testify or not independently. Now, the fact that it then affects your job, you're essentially saying it's not the Department of Justice's problem. Your Honor, it sometimes appears harsh, but the discretion involved in making witness credibility assessments is at the core of the prosecutor's office. And plaintiff here is not just seeking notice and a hearing. He wants to get into what DOJ knew, who they received it from, all of the underlying investigation done by his internal affairs division. That's quite a lot of information about an investigation where he ultimately wasn't prosecuted that no one else would be entitled to in this other situation. Simply because you have someone who was investigated for a crime the U.S. Attorney's Office declined to prosecute, that person wouldn't be entitled to find out everything that had ever gone on with them and receive all of their investigative files. And here, plaintiff is trying to manufacture a liberty interest to get access to that information that's not relevant to the U.S. Attorney's choice into whether or not to let him testify. And that's why those – Be relevant, but you're saying he's not entitled to even if it is relevant. It certainly sounds relevant. It's not relevant because there's no interest to it. Process is not a means to itself. But it's relevant. If it's relevant, you're just saying he has no right to it. Well, and for those reasons – What do you think his remedy would be? I mean, obviously, there's something here that does impact his reputation. Being accused of having a relationship with somebody who's a foreign national, don't you think he should have some opportunity to clear his name before some tribunal? Well, your – Stop. Your Honor, here, because the decision on his removal was based solely on his inability to testify, it doesn't impugn his reputation. While there was these underlying facts that led to that – Well, it certainly impugns his reputation. Somebody who has such a bad reputation that he can't testify has an impugned reputation. That's their conclusion. Their conclusion was, your reputation is so terrible that we're not going to let you testify. How does he clear his name? In this case, the name clearing doesn't matter because he could take his employment file from CBP and work at any other place that doesn't require him to testify in front of the U.S. Attorney's Office. And that is quite a number of jobs. And that's why the – I mean, that, I suppose, is somewhat questionable. I mean, if he goes to apply for a job and he – it appears that he's been demoted from border patrol to a desk job, and they say, why is that? And he says, because I couldn't testify, I wasn't allowed to testify because DOJ says I'm not believable. That seems to me isn't going to help him get a job. Any other job. Any job. Well, Your Honor, in the most cases, when someone gets demoted, it can impact negatively their chances to get other jobs. But the question is simply whether – And people are going to ask why, and if the reason is because I didn't get along with my boss, that's one thing, or if the reason is because they didn't need my job anymore, that's another thing. But if the reason is that they thought I was a liar, or somebody thought I was a liar, that doesn't help very much at all. I can certainly understand that, Your Honor. But here, because the Department of Justice is not his employer, they can't change his employment status, and because there's no liberty or property interest in testifying – The problem is that the baseline constitutional rule is that ordinarily you don't have any interest in your reputation as such. It's an odd rule, but it seems to be the rule, except in this Roth context. You're correct, Your Honor. But that's where I leave you. All right. Thank you. Thank you, Judge Gould. The Stanford Law Review article I was referencing is called Brady's Blind Spot, Impeachment Evidence in Police Personnel Files and the Battle Splitting the Prosecution Team, 67 Stanford Law Review, 743, 2015. Thank you. The key here is in the record at page 51, the decision letter from the Border Patrol deciding official. He says he's removed, Mr. Espinoza's removed for inability to perform the full and unrestricted duties of a Border Patrol agent. The deciding official says, I've given full and careful consideration, the contents of the case file, specifically the Giglio letter from the United States attorney, and all arguments raised during your oral reply. I did not, however, consider the underlying investigation done by DHS-OIG as the United States attorney's – But isn't there a problem here that you're suing the wrong person, that you could have sued the Border Patrol on Roth and said, well, I'm sorry, but you can't do that. You do, in fact, have to deal with the reputational interest that is created by that Giglio letter as it affects his employment. And, you know, what you do with that information once you make the decision is – I don't know whether this is a due process, right, but you could at least argue that then you should go back to the – it's your obligation if you decide that the information is wrong to go back to the DOJ and say you've made a mistake here. But it seems that using – I mean, we have Roth and we have Paul v. Davis, right? And without the connection to the employment, you don't have a separate reputational interest. So why do you argue you're suing the wrong person? Well, for the same reason that this is precisely why this case is before this Court, is because the – because the Department of Justice and the Department of Homeland Security did an end-around due process. I know, but that still doesn't answer my question. Because the Department of Homeland Security then argues, well, we didn't consider the underlying – the underlying fact. That's correct. And your argument would be, but you can't do that. Under Roth, you can't not consider it. You have to consider it. You could have appealed. You could have challenged a decision by his employer. We did, Judge. We filed an MSPB appeal. That was dismissed. We filed with the Office of Special Counsel. That was dismissed. We've exhausted our administrative premise. Really? I mean, I would think there's a process, you know, by which you can have a review or some determination as to whether the employer satisfied the Roth standard. If the Court is going to recognize that that is what is allowed in this case, that he should have – You didn't sue them. I mean, we don't – that's not the case we've got. Right. Because our argument is that the process – so Dorfmant, right – You see, I like that case better than this case. So Dorfmant, which was cited by the government, why that's not helpful is because in Dorfmant, that person had process before the security clearance was revoked. And so if Mr. Espinoza had some process, notice, and an opportunity to respond to the allegation that he lacked candor to DHSOIG – Well, he did have that before the agency, which then decided it wasn't going to go there, and if your problem is the stigma plus, which is what you're saying, that's the place to worry about it. Understood. Thank you very much. Thank you, Judge. The Espinoza v. Whitaker is submitted, and we'll go to the last case of the day, Vasquez v. Jam Crow Franchising.
judges: Gould, Berzon, Block